UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE NCAA STUDENT-ATHLETE  )
NAME & LIKENESS LICENSING  )    Case No. 4:12-mc-00508 JAR
LITIGATION,  )
   )
   )

## MEMORANDUM AND ORDER

This miscellaneous matter is before the Court on Electronic Arts Inc.'s Motion to Compel Production of Documents [ECF No. 2]. The Motion is fully briefed and oral argument was held on Wednesday, September 26, 2012. For the following reasons, the motion will be granted in part.

## Background

The above-captioned federal action, *In Re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 09-1967, is currently pending in the United States District Court for the Northern District of California against Defendants National Collegiate Athletic Association ("NCAA"), Collegiate Licensing Company ("CLC"), and Electronic Arts Inc. ("EA"). Plaintiffs include former college basketball and football players who allege that EA uses their names, images and likenesses in its NCAA Football, NCAA Basketball and NCAA March Madness video games without their consent, in violation of federal antitrust laws and their statutory and common law right to publicity. This matter concerns a three-part stream of research conducted by Anastasios Kaburakis, an assistant professor at Saint Louis University, related to amateurism in the student-athlete context.

On November 16, 2011, EA served Kaburakis with a third party subpoena for documents related to his research. In response to the subpoena, Kaburakis produced the published articles that resulted from the first two streams of student-athlete research, namely, (1) Kaburakis, A., Pierce, D., Fleming, O., Clavio, G., Lawrence, H., and Dziuba, D., *"It's in the likeness." NCAA Student-Athletes' Rights of Publicity, EA Sports, and the video-game industry,* Entertainment and Sports Lawyer, Vol. 27,

No. 2, 1-39 (Summer 2009); and (2) Kaburakis, A., Pierce, D., Cianfrone, B., and Paule, A. *Is it still "In the Game," or has Amateurism Left the Building? NCAA Student-Athletes' Perceptions of Commercial Activity and Sports Video Games*, Journal of Sport Management, Vol. 26, Iss. 4, 295-308 (2012). Kab. Decl. at ¶ 8.

The instant motion concerns a third stream of research conducted by Kaburakis related to consumers' ability to identify student-athletes in video games. Kaburakis has objected to producing his research on the grounds that the preliminary conclusions of his research as set forth in a draft article, along with an underlying dataset, is currently in peer review and has not yet been finalized or accepted for publication. He argues that disclosure before peer review is completed would be a significant burden on him and his co-authors and contrary to the law protecting this type of work from production. Kaburakis has agreed to produce the study in final form once it is approved by his publisher. EA filed its motion to compel seeking production of a copy of the consumer study article and the completed survey dataset. In response, Kaburakis asserts a scholar's privilege and requests a protective order under Fed.R.Civ.P. 26.

## **Legal Standard**

Fed.R.Civ.P. 26(b)(2)(C) provides in relevant part that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(c).

In determining whether to enforce a Rule 45 subpoena, the issuing court must consider whether the subpoena subjects the person to an "undue burden." Fed.R.Civ.P. 45(c)(1), (c)(3)(A)(iv). This "undue burden" factor is "designed to track Rule 26(c), the principal

protective order provision applicable in federal discovery." CitiMortgage, Inc. v. NL, Inc., 2012 WL 1344994, at *1 (E.D.Mo. April 18, 2012) (quoting Fed.R.Civ.P. 45, Advisory Committee Notes, Commentary 22). As such, in determining whether the subpoenaed person would be subject to "undue burden," the court looks to the protections provided in Rule 26(c) in determining whether there are grounds to quash or modify the subpoena under Rule 45. Id. "[T]he factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Plant Genetic Systems, N.V. v. Northrup King Co., Inc., 6 F.Supp.2d 859, 861 (E.D.Mo.1998) (quoting Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed.Cir.1986)).

## Discussion

In support of its motion to compel, EA maintains that Kaburakis' article is centrally relevant to an issue at the heart of the underlying action, namely, whether EA's avatars are identifiable as the Plaintiffs. EA states the underlying survey data is particularly relevant because the Plaintiffs may choose to rely on some of Kaburakis' conclusions and EA has a right to rebut the validity of those conclusions by pointing to the underlying data. EA argues there is no "scholar's privilege" that applies to the documents Kaburakis seeks to withhold, and that any concern that the academic integrity of his work would be compromised by producing the manuscript before completion of the peer review process can be adequately addressed by the stipulated protective order entered in the Underlying Action.

In response, Kaburakis argues that production of his article before his conclusions have been finalized through the peer review process would pose an undue burden that outweighs EA's purported need. Kaburakis further argues that in situations where a researcher's data must be

disclosed, compensation and reimbursement for costs and expenses pursuant to Rule 45 is justified.

As a threshold matter, the Eighth Circuit has not addressed the existence of an academic or scholar's privilege as a defense to subpoenas calling for the production of research data, and the majority of courts outside this Circuit that have considered the issue have declined to recognize it. The few cases that have recognized the privilege or quashed subpoenas to researchers are distinguishable from the circumstances here. In particular, in Deitchman v. ER Squibb & Sons, Inc., 740 F.2d 556 (7th Cir. 1984), the court ordered disclosure under a protective order designed to safeguard patient confidentiality. Id. at 565. Concerns about confidentiality were also the basis for quashing a subpoena served on university researchers to obtain their notes and interview tapes in Cusumano v. Microsoft Corporation, 162 F.3d 708 (1st Cir. 1998). In Cusumano, the First Circuit noted the researchers had verbally promised each interviewee that he would be given an opportunity to correct, comment on, or disclaim attributed quotations prior to publication. These assurances were "a species of confidentiality" that would be violated by Microsoft's demand for the tapes. Id. at 715. Kaburakis does not claim that the information sought by EA contains any confidential information.

EA contends that courts routinely order production of research data in civil litigation, citing Burka v. Department of Health and Human Services, 87 F.3d 508, 521 (D.C. Cir. 1996); however, Burka concerns the disclosure obligations of a governmental entity under the Freedom of Information Act (FOIA), and is, therefore, distinguishable from the instant case involving a private interest. Further, the Burka court did not weigh burden against need.

Without reaching the ultimate issue of whether a scholar's privilege exists, the Court finds that in any event, such a privilege would not apply to the facts of this case. In addressing EA's motion to compel, the Court will apply a balancing test, weighing EA's need for immediate

access to Kaburakis's consumer study and survey data against the burden of disclosure. As discussed above, EA claims it needs the consumer study and data to respond to Plaintiffs' possible use of the article. At this point in time, the draft article has no bearing on any issues in the case. If the article is never published, there is no probability that it will be used at trial by either side. EA's need for the material is, therefore, speculative at best. EA argues that time is of the essence because discovery in the Underlying Action closes on October 31, 2012, yet the Underlying Action is currently not set for trial until February 2014, which contradicts EA's claim of immediate need.

Regarding the burden of disclosure, Kaburakis is a private non-party to the Underlying Action. He is not an endorsed witness, and in fact has declined to be identified as an expert in the underlying action by either side. "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." Misc. Docket Matter I v. Misc. Docket Matter 2, 197 F.3d 922, 926-27 (8th Cir. 1999) (quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)).

Another factor for the Court to consider is that Kaburakis's consumer study article remains in the peer review process. Peer review is used extensively in academic research and generally refers to the evaluation of articles prior to publication. The Court recognizes that peer review is a critical step in finalizing and adding credibility to a research study. The peer review process can be a multi-step process of review, comment, and edits followed by additional rounds of review, comments, and edits, until the peer reviewers approve the work and the publisher accepts the piece for publication. Only after peer review approval is an academic piece considered "in press" and substantively complete. The burden of complying with a subpoena goes beyond mere production. Here, Kaburakis contends that premature disclosure could reveal analyses and conclusions that will differ from the ultimate published article, thereby

undermining the credibility of his research and threatening its publication, which in turn could impact his pursuit of tenure. It is undisputed that the length and timing of the peer review process is beyond Kaburakis' control. That said, the draft manuscript is far along in the peer review process, having been submitted in November 2011. It would appear to the Court that the process will be completed well before the February 2014 trial date. In the event the article and dataset are produced, EA will have access and an opportunity to review it prior to trial.

As a final matter, EA states it agreed to narrow the scope of its request to the "consumer survey article and completed dataset." The Court notes, however, that the subpoena on its face appears to include the raw data underlying Kaburakis' research, including "each individual response to the '18-item online questionnaire.' " (Doc. No. 2-1, Attachment A) Because it is unclear whether raw data is covered by EA's narrowed request, the Court has not addressed this as part of EA's motion to compel. Nevertheless, it would appear that any request by EA for raw data would entitle Kaburakis to reasonable compensation for the research materials provided in response to the subpoena. See Rule 45(c)(3)(B)(ii) and 45(c)(3)(C)(ii). See also, Wright v. Jeep Corp., 547 F.Supp. 871, 877 (E.D. Mich. 1982) ("[I]n the appropriate case a charge for a portion of the expenses of the original research" may be imposed, as well as "other conditions as necessary to relieve the burden imposed by the subpoena.").

Accordingly,

**IT IS HEREBY ORDERED** that Electronic Arts Inc.'s Motion to Compel Production of Documents [2] and Anastasios Kaburakis's request for protective order pursuant to Fed.R.Civ.P. 26 are **GRANTED** in part. Within three (3) days of completion of the peer review process, Kaburakis shall produce to EA an "in press" copy of his consumer study article and the relied upon dataset.

**IT IS FURTHER ORDERED** that production of the "in press" copy of Kaburakis's consumer study article and relied upon dataset to EA shall be under the protections of the protective order entered in the Underlying Action.

Dated this 12th day of October, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE